UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No. 1:17-CV-5

ELIZABETH M.T. O'NAN, an individual, and ELIZABETH M.S. O'NAN, an individual,

    Plaintiffs,

vs.

NATIONWIDE INSURANCE COMPANY, a Corporation; SERVPRO INDUSTRIES, INC., a Corporation; SERVPRO OF MARION, a Corporation,

    Defendants.

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Nationwide Insurance Company, by and through undersigned counsel, hereby remove this action from the Superior Court for McDowell County, in which court the case is currently pending, to the United States District Court for the Western District of North Carolina.

## INTRODUCTION

This case involves a chimney fire that occurred at Plaintiffs' residence in McDowell County, North Carolina. (Compl. ¶¶ 1, 8). Pro-se Plaintiffs allege generally that Servpro Industries and "Servpro of Marion" breached the standards

of care and contractual duties owed to Plaintiffs in cleaning their home. Plaintiffs generally allege that Nationwide Insurance Company breached its contractual duties in adjusting their insurance claim. The causes of action asserted by Plaintiffs are breach of contract, breach of the duty of good faith and fair dealing, intentional interference with contractual relations, false promise, negligence, and fraud.

Federal jurisdiction is proper in this case. There is a sufficient amount in controversy based on the injuries alleged in the Complaint, and there is complete diversity among the parties properly named in this action. As explained below, "Servpro of Marion" is a non-existing entity, and even if it existed, the limitations period for Plaintiffs' actions against all Servpro entities has run. Thus, the alleged citizenship of "Servpro of Marion" should be ignored, and removal is proper.

**I.　REMOVAL IS TIMELY AND PROPER**

1.　On November 30, 2016, Plaintiffs filed a complaint in the Superior Court of McDowell County, Case No. CVS 943.

2.　Plaintiffs served a copy of the Summons and Complaint to Nationwide Insurance via certified mail on December 9, 2016. Servpro Industries, Inc. was served on December 5, 2016 via certified mail, and John L. Kuder received a copy of the Summons and Complaint intended for "Servpro of Marion"

on December 8, 2016. Accordingly, Defendant's time to remove has not yet expired.

3. All Defendants consent to removal.

4. Pursuant to 28 U.S.C. § 1446(a), Defendant Nationwide Insurance Company has attached hereto as **Exhibit 1**, a copy of all process, pleadings, and orders in the state court action.

5. Pursuant to 28 U.S.C. § 1446(d), Defendant Nationwide Insurance Company shall give Plaintiffs written notice of the filing of this Notice of Removal, and shall file the written notice of the filing of this Notice of Removal with the clerk of the Superior Court for McDowell County, attaching thereto a copy of this Notice of Removal. An unfiled copy of the Notice of Filing of the Notice of Removal is attached hereto as **Exhibit 2**.

## II. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000, EXCLUSIVE OF INTEREST AND COSTS.

6. Based on the factual allegations of the Complaint, the amount in controversy exceeds $75,000.

7. In their Complaint, Plaintiffs do not allege a specific dollar amount in damages. They only allege "the amount in controversy exceeds the jurisdictional minimum of this Court." (Compl. ¶ 7).

8. Although the amount in controversy is normally determined from the face of the pleadings, where no specific amount is alleged, the Court "may

consider any evidence of the amount in controversy," including material outside the Complaint. *Pigg v. Progressive Cas. Ins. Co.,* No. 3:06 CV 125-H, 2006 WL 1789145, at *3 (W.D.N.C. June 27, 2006) (citing *Talantis v. Paugh Surgical, Inc.*, 273 F. Supp. 2d 710, 713 (M.D.N.C. 2003)).

9. When determining if a case meets the threshold requirements for jurisdiction, in addition to considering outside evidence, the Court also weighs the type and extent of the plaintiff's injuries and the possible damages recoverable. *Green v. Caterpillar Inc.*, No. 2:14-CV-26-MR-DSC, 2014 WL 4798705, at *3 (W.D.N.C. Sept. 26, 2014). This evidence can include a plaintiff's statements on the extent of her injuries and the description of her pain and suffering. *Pigg,* No. 3:06 CV 125-H, 2006 WL 1789145, at *3-4.

10. In this case, Plaintiffs allege that Defendants have caused them damages including, but "not limited to, (1) loss of real property; (2) loss of additional living expenses; (3) interest on withheld payments due under the policy and; (4) other special, physical injuries, economic and consequential damages." (Compl. ¶ 46).

11. Plaintiffs also seek punitive damages (Compl. ¶ 64), which in North Carolina can be up to three times the amount of compensatory damages or $250,000.00, whichever is greater. N.C. Gen. Stat. § 1D-25(b). In determining the

amount in controversy, courts may include claims for punitive damages. *Bell v. Preferred Life Assur. Soc.*, 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943).

A. **Plaintiffs' claim for unpaid additional living expenses total approximately $151,138.52.**

12. The Complaint alleges that the insurance policy provides "[w]hen a Loss Insured causes the residence premises to become uninhabitable, [Nationwide] will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months." (Compl. ¶ 23).

13. Alternative living arrangements for Plaintiffs were provided through a company called Temporary Accommodations, Inc. (Declaration of Gates ¶ 3). Living arrangements were provided from December 9, 2016 to January 6, 2014. (Decl. of Gates, Exs. A and B).

14. Plaintiffs claim that temporary accommodations should have been provided for a longer period of time. Plaintiffs claim that due to lack of temporary housing, they were forced to sleep in a tent on the porch of their home, sleep in their car, rent alternative housing, or wear respirator masks inside their home. (Compl. ¶ 51, 55). This situation continued for "almost three years" where the Plaintiffs allegedly had to "choose between homelessness or risk further injury from their contaminated home." (Compl. ¶¶ 53, 54).

15. Plaintiffs allege not only that the duration of the temporary housing was insufficient, but also that the quality of the temporary housing provided was

5

insufficient. Specifically, Plaintiffs allege that "Nationwide refused to pay for safe alternative housing and **would not approve the more expensive . . . housing** that was needed." (Compl. ¶ 51) (emphasis added).

16. As shown by the invoices attached to the Declaration of Gates, Plaintiffs first received temporary housing at the Comfort Inn in Marion from December 9, 2013 to December 13, 2013 at a rate of $99.32 to $100.57 per night. (Decl. of Gates, Ex. A). After that stay, Plaintiffs were provided a rental home from December 12, 2016 to January 6, 2016 at a rate of $218.58 per night. (Decl. of Gates, Exs. A and B). Plaintiffs also received hotel stays at Asheville Cottage from December 31, 2016 to January 6, 2014 at rates from $317.79 to $341.34 per night. (Decl. of Gates, Ex. B).

17. Considering the face of the Complaint and the attached invoices from Temporary Accommodations, Inc., the amount in controversy stemming from unpaid additional living expenses is approximately $151,138.52.

    a. Plaintiffs claim that Nationwide should have approved "more expensive" housing than what it had paid. Although the most expensive housing provided had a per-night rate of $341.34, the per-night rate paid for the majority of the nights under the policy was $218.58 per night. Thus, using a rate of $218.59 per night is a conservative baseline for the minimum that Plaintiffs contend Nationwide should have paid for alternative housing.

b. Per the allegations of the Complaint, Nationwide was required to pay for this "more expensive" housing for up to 24 months (Compl. ¶ 23), and Plaintiffs suffered actual residential displacement during "almost three years." (Compl. ¶ 53).

c. There are 730 nights between December 4, 2013 and December 4, 2015. At a rate of $218.59 per night, Plaintiffs claim that Nationwide should have paid at least $159,570.70 in additional living expenses. Even subtracting the $8,432.18 that Nationwide did pay (*See* Decl. of Gates Exs. A and B), Plaintiffs' claim for unpaid additional living expenses still totals $151,138.52.

18. Thus, Plaintiffs claim for unpaid living expenses alone exceeds the amount in controversy requirement in this case.

**B. Plaintiffs' claim for loss of real property totals between $103,680.00 and $280,220.00.**

19. Plaintiffs allege damage to their real property located at 396 Sugar Cove Road, Marion, North Carolina 28752-6228. (Compl. ¶ 19).

20. Plaintiffs claim that their entire home suffered severe and permanent damage from the chimney fire and the alleged poor cleaning efforts by "Servpro of Marion" and Servpro Industries. The scope of damage stated in the Complaint is large.

a. Plaintiffs claim that the home is "forever . . . improperly repaired and diminished in value." (Compl. ¶ 56).

b. "The whole house was affected by the release of this dry chemical fire extinguisher and the house was uninhabitable." (Compl. ¶ 8, 25).

c. Plaintiffs repeatedly allege that the fire restoration work caused additional damage to their property, beyond the initial chemical contamination. (*See, e.g.*, Compl. ¶¶ 76, 77, 86, 102, 112, 117, 142).

d. According to Plaintiffs, the dry chemical fire extinguisher residue was atomized and spread "throughout the home," which caused "widespread dry chemical fire extinguisher contamination." (Compl. ¶ 12(b), (l)).

e. Plaintiffs allege that "no other fire restoration company would attempt to clean" their "contaminated home" after the dry chemical fire extinguisher had been spread and atomized throughout the home. (Compl. ¶ 54).

f. They also allege that the house is "not properly repaired, irreparably devalued and not free of Ansul Foray dry chemical fire extinguisher." (Compl. ¶ 60).

g. Plaintiffs seek damages "for all costs involved in repairing the damage caused." (Compl. at page 34, ¶ 33 of "Prayer for Relief").

21. In communications with Nationwide, Plaintiff Elizabeth M.T. O'Nan has stated that "[m]any contractors do not feel [that] the home can be returned to its pre fire condition and recommend **we completely gut the house and rebuild**." (Declaration of Gates Ex. C) (emphasis added).

22. In the same communication, Plaintiff Elizabeth M.T. O'Nan requests the full payment of her policy immediately. *Id.* Plaintiff's Property coverage limits for her dwelling is $308,900. (Compl. Ex B p. 93 of 122).

23. McDowell County tax records show that the depreciated building value of Plaintiffs' house is $103,680.00 (Exhibit 3).[1] The total replacement cost of the building, without depreciation, is $280,220.00. *Id.*

24. Thus, Plaintiffs' allegations regarding the permanent damage to their home, and Plaintiff's communications regarding the need for a rebuild and requesting payment of full policy limits, show that the amount in controversy exceeds $75,000.

---

[1] The McDowell County Tax Card for Parcel 0754-00-91-9763 / 396 Sugar Cove Road is also available at:
https://www.bttaxpayerportal.com/ITSPublicMD/AppraisalCard.aspx?id=075400919763.

C. **Plaintiffs' allegations regarding their physical injuries, economic and consequential damages also contribute to the amount in controversy.**

25. Plaintiffs' own descriptions of their physical injuries can be properly considered by the court in determining the amount in controversy. *See Pigg*, No. 3:06 CV 125-H, 2006 WL 1789145, at *3-4 (considering the physical injuries listed in the Complaint).

26. Here, Plaintiffs claim that the Defendants caused a number of physical ailments, which include: total sudden hearing loss in Ms. O'Nan's right ear, severe visual and neurological vertigo, chronic eye infections, chronic skin irritation and burns, violent and chronic nose bleeds, diminished breathing capacity, daily headaches, rashes, and hives. (Compl. ¶ 55). Plaintiffs also claim that "Ms. O'Nan can no longer walk without assistance and is in constant pain due to the stress Nationwide caused and unsuitable conditions to which Nationwide relegated the family." (Compl. ¶ 52).

27. Plaintiffs also contend that they have lost significant personal property for which the policy provides coverage. (Compl. ¶ 22).

28. Plaintiffs' personal property loss alleged in her Complaint includes the death of three pets (Compl. ¶ 51), contamination of furniture and soft goods (Compl. ¶¶ 16, 111), and contamination of the HVAC system (Compl. ¶ 62). In communications with Nationwide, Plaintiffs have also claimed damage to their

water heater, water softener and deacidifier, numerous appliances, electronics, and soft goods. (Decl. of Gates, Exs. C and D).

29. Plaintiffs also allege that they have experienced pain and suffering and mental hardship due to the actions of Defendants. These allegations include: social isolation, loss of companion animals, reduced ability to participate and enjoy life, loss of holidays with family, loss of the "last years of [Ms. Elizabeth M.S. O'Nan's] youth," suffering verbal abuse, and suffering physical intimidation. (Compl. ¶¶ 51, 55, 57)

30. These injuries should be considered with the aforementioned damages above.

31. Considering all the damages alleged in the Complaint, including the demand for punitive damages, the amount in controversy well exceeds $75,000.00.

## III. COMPLETE DIVERSITY EXISTS AMONG THE PARTIES

32. Plaintiffs are individuals who are citizens of the state of North Carolina. (Compl. ¶ 1).

33. Defendant Nationwide Insurance Company is an Iowa corporation with its principal place of business in Des Moines, Iowa. (Decl. of Richards ¶ 3).

34. Defendant Servpro Industries, Inc. is a Nevada corporation with its principal place of business in Tennessee. (Decl. of Zombek ¶ 3).

35. The Defendants identified as "Does" 1 through 50 (Compl. ¶ 5) are merely fictitious parties that may be ignored for purposes of determining removal. 28 U.S.C. § 1441(b)(1).

36. The citizenship of "Servpro of Marion" (Compl. ¶ 4) should be disregarded in determining the existence of diversity for the purpose of removal for two reasons. First, because "Servpro of Marion" does not exist, either as a North Carolina corporation or as the assumed name under which any Servpro franchisee conducts business in North Carolina. Second, because even if the proper local Servpro entity was served, there is no possibility that Plaintiffs can maintain a cause of action against it, since the limitations period for Plaintiffs' actions against any existing Servpro entities has run.

37. Where a removing party can show that there is no possibility that the plaintiff would be able to establish a cause of action against the named in-state defendant in state court, the naming of a non-diverse defendant does not defeat diversity jurisdiction. *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015). Thus, the non-diverse defendant's citizenship can be ignored for purposes of establishing diversity jurisdiction. *Id.*

A. **"Servpro of Marion" does not exist in North Carolina**

38. Plaintiffs allege, upon information and belief, that "defendant Servpro of Marion was at the time of the complaint a corporation duly organized and

existing under the laws of the State of North Carolina and is authorized to transact and is transacting business in the State of North Carolina." (Compl. ¶ 4).

39. There is no corporation with the name "Servpro of Marion" registered with the North Carolina Department of the Secretary of State.[2]

40. Servpro Industries, Inc. is a franchisor to over 1,700 independently owned and operated locations in the United States. (Decl. of Zombek ¶ 4). As part of its regular business activities, Servpro Industries keeps a record of the legal names of all their franchisees. (Decl. of Zombek ¶ 5). Servpro Industries' records do not contain any "Servpro of Marion" doing business in North Carolina. (Decl. of Zombek ¶¶ 6-7).

41. More importantly, the exhibits that Plaintiffs attached to their Complaint show that "Servpro of Marion" was not the entity with which Plaintiffs contracted.

42. Exhibit D to Plaintiffs' Complaint shows that Plaintiff had a contract with Servpro of McDowell and Rutherford Counties. Indeed, in all of the signatory lines to the contract, this entity's name was used. (*See* Compl. Ex. D at 1, 4). "Servpro of Marion" does not appear anywhere on the contract.

---

[2] A search of the Corporations Division of the North Carolina Department of the Secretary of State for corporations whose name contains any of the words "servpro" or "marion" yields 444 search results, none of which match "Servpro of Marion." (*Corporations Division*, http://www.sosnc.gov/search/index/corp (select "Name Contains Any Words" in the "Choose A Search Type" drop-down menu; then search "Organizational Name" field for "servpro marion")).

43. Plaintiffs have brought suit against a non-existent company, and therefore, the citizenship of this company should be ignored in determining diversity jurisdiction.

**B. The limitations period for Plaintiffs' actions against any existing Servpro entities has run.**

44. Even if this Court finds that Servpro of McDowell and Rutherford Counties has been properly served by the service to "Servpro of Marion," diversity still exists.

45. The Western District of North Carolina has recognized a statute of limitations defense as a basis for disregarding the citizenship of a non-diverse defendant to retain removal jurisdiction. *Rhodes v. Mun. Emergency Servs., Inc.*, No. 3:14-CV-00314-MOC-DS, 2014 WL 6808666, at *2 (W.D.N.C. Dec. 2, 2014) (denying motion to remand, and holding that plaintiff's failure to issue a summons to non-diverse defendant before the statute of limitations ran on her claims was sufficient evidence that plaintiff could not assert her state-based causes of action against the non-diverse defendant).

46. In this case, the statute of limitations has run on all of the Servpro entities.

47. In North Carolina, the statute of limitations begins to run on a breach of contract when the breach first occurs. *Liptrap v. City of High Point,* 128 N.C. App. 353, 355-56, 496 S.E.2d 817, 819 (1998).

48. In Plaintiffs' Complaint, the alleged breach by Servpro was discovered by Plaintiff on or before January 2, 2014: "The O'Nan's home was so contaminated that they were able to write their name in the gold dust on the floor of their home upon arrival on Jan 2, 2014 after they were told their home's cleaning was complete and the home was safe." (Compl. ¶ 58).

49. Thus, the statute of limitation on the Servpro contract began to run on or before January 2, 2014.

50. In North Carolina, the statute of limitations for breach of contract is three years. N.C. Gen. Stat. § 1-52. North Carolina allows parties to contractually limit actions relating to the subject matter of the contract. *Badgett v. Fed. Express Corp.,* 378 F.Supp.2d 613, 623 (M.D.N.C.2005). In this case, the Servpro contract contains the following limitation:

"NO ACTION, REGARDLESS OF FORM, RELATING TO THE SUBJECT MATTER OF THIS CONTRACT MAY BE BROUGHT MORE THAN ONE (1) YEAR AFTER THE CLAIMING PARTY KNEW OR SHOULD HAVE KNOW OF THE CAUSE OF ACTION." (Compl. Ex. D p. 118 of 122).

51. This provision has been found enforceable by the North Carolina Court of Appeals. In *Steele v. Safeco Ins. Co. of Am.,* 223 N.C. App. 522, 735 S.E.2d 451 (2012) (unpublished), plaintiff's home and belongings were damaged by a fire. Plaintiff claimed that Servpro of Southern Gaston County breached its

contract when it improperly disposed of his belongings. In *Steele,* "[t]he contract terms included, among other things, a one-year limitation on actions relating to the subject matter of the contract, beginning from when 'the claiming party knew or should have known of the cause of action.'" 223 N.C. App. at *1, 735 S.E.2d at *1. The North Carolina Court of Appeals found that this contractual term was valid, and that the trial court had correctly dismissed plaintiff's claims against Servpro as time barred.

52. Here, Plaintiffs filed their action on November 30, 2016. This is more than a year from January 2, 2014. All of Plaintiffs' claims against Servpro arise from the subject matter of the cleaning contract. Thus, Plaintiffs claims against the Servpro Defendants are barred.[3]

53. In the alternative, even if the one-year contractual limitation is not enforceable, which the Defendants deny, North Carolina's three-year statute of limitation bars Plaintiffs' claims against Servpro of McDowell and Rutherford Counties. "In North Carolina, it is well-established law that if a plaintiff does not name the party responsible for his alleged injury before the statute of limitations runs, his claim will be dismissed." *Estate of Fennell ex rel. Fennell v. Stephenson*, 354 N.C. 327, 332, 554 S.E.2d 629, 632 (2001).

---

[3] The Defendants intend to file a Motion to Dismiss based on this defense as well as others after removal, pursuant to the Federal Rules of Civil Procedure.

54. In this case, Plaintiffs did not name Servpro of McDowell and Rutherford Counties before January 2, 2017, and therefore any claim against this non-diverse defendant should be barred.

55. Because (1) "Servpro of Marion" does not exist and (2) the claims against the Servpro defendants are time barred, there is no possibility that Plaintiffs would be able to establish a cause of action against an in-state defendant. Thus, the citizenship of "Servpro of Marion" should be disregarded and federal jurisdiction is proper. *See Rhodes v. Mun. Emergency Servs., Inc.,* No. 3:14-CV-00314-MOC-DS, 2014 WL 6808666, at *8 (W.D.N.C. Dec. 2, 2014) (because summons was defective, the statute of limitations had run and the non-diverse defendant's citizenship was properly ignored).

## **CONCLUSION**

WHEREFORE, Defendant Nationwide Insurance Company, with consent of all Defendants, respectfully request the above-captioned action now pending in the Superior Court for McDowell County be removed to the United States District Court for the Western District of North Carolina, and that the United States District Court for the Western District of North Carolina assume jurisdiction of this action and enter such other and further orders as may be necessary to accomplish the requested removal and promote the ends of justice. If any questions arise as to the

propriety of the removal of this action, Defendant requests the opportunity to present a brief and argument in support of its position that this case is removable.

Respectfully submitted, this the 4th day of January 2017.

/s/ Gemma L. Saluta
Rachel E. Keen, N.C. State Bar No. 27777
Gemma L. Saluta, N.C. State Bar No. 37032
Womble Carlyle Sandridge & Rice, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
Email: RKeen@wcsr.com
Email: GSaluta@wcsr.com

*Attorneys for Nationwide Insurance Company*

# CERTIFICATE OF SERVICE

This is to certify that on January 4, 2017, a copy of the foregoing *Notice of Removal* was filed electronically with the Clerk of Court using the CM/ECF system.

It is further certified that on January 4, 2017, a copy of the foregoing *Notice of Removal* was served upon the following by U.S. First Class Mail, postage prepaid and addressed as follows:

Elizabeth M. T. O'Nan
396 Sugar Cove Road
Marion, NC 28752-6228

*Pro se*

Lucienne M. Peoples
McAngus, Goudelock & Courie
10 Brook Street, Suite 200
Asheville, NC 28803

*Attorney for Servpro Industries, Inc., and "ServPro of Marion"*

          /s/ Gemma L. Saluta
          Gemma L. Saluta
          N.C. State Bar No. 37032
          Womble Carlyle Sandridge & Rice, LLP
          One West Fourth Street
          Winston-Salem, NC 27101
          Telephone: (336) 721-3600
          Facsimile: (336) 721-3660
          Email: GSaluta@wcsr.com

          *Attorney for Nationwide Insurance Company*